UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CLARK BAKER and THE | § | |
| OFFICE OF MEDICAL & | § | |
| SCIENTIFIC JUSTICE, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO._____ |
| | § | |
| JEFFERY TODD DESHONG | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Clark Baker and the Office of Medical & Scientific Justice, Inc., Plaintiffs in the above styled and numbered cause, complaining of Defendant Jeffrey Todd Deshong and for causes of action would show as follows:

### I.  PARTIES

1.     Plaintiff Clark Baker (Baker) is a licensed private investigator and founder of Plaintiff The Office of Medical & Scientific Justice, Inc.  Plaintiff Baker resides at 2645 Greenvalley Road, Los Angeles, California 90046.

2.     Plaintiff Office of Medical & Scientific Justice, Inc. (OMSJ) is a 501(c)(3) non-profit public benefit corporation, formed and operating under laws of the State of California.  In addition, it is a licensed investigative agency in California specializing in the investigation of cases that involve medical and scientific corruption.

3.     Defendant Jeffrey Todd Deshong (Deshong) is a resident natural person of the State of Texas residing at 4858 River Ranch Blvd., #1717, Ft. Worth, Texas 76132-1829.  This Court therefore has personal jurisdiction over the Defendant Deshong.

## JURISIDICTION AND VENUE

4.     This Court has diversity jurisdiction over this action under 28 U.S.C. §1332 because the matter in controversy arises between citizens of different states and because the amount in controversy exceeds $75,000. In addition, this Court has jurisdiction under 28 USC §1331 because Plaintiff seeks relief for trade name infringement/violation under the Lanham Act; see 15 U.S.C.A. §§1051–1127.  In addition Plaintiff alleges two pendant state claims for trade name infringement/violation under the Texas Trademark Act; see TEX. BUS. & COM.CODE ANN. §§16.01–16.31 and common law defamation.

5.     Defendant resides in, solicits, transacts, or does business within the State of Texas, and he has committed unlawful and tortious acts by writing, sharing, and publishing defamatory statements about Plaintiffs from within the State of Texas, as described herein below.  In addition, his Internet activity constitutes an infringement of Plaintiff OMSJ's trade name. All of the claims herein arise out of this conduct.  As such, in addition to be a resident of the State of Texas, Defendant Deshong has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over him.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b)(2) and 1400(a).  Defendant not only resides in this district, but his Internet activity, including

both defamation and trademark infringement, all occurred from his Ft. Worth, Texas residence.

## STATEMENT OF FACTS

**A.    Baker, OMSJ, and the HIV INNOCENCE GROUP:**

7.    Plaintiff Baker is a retired officer of the Los Angeles Police Department and a licensed private investigator since 1997.  He is also the Chief Executive Officer and principle investigator of Plaintiff OMSJ.  OMSJ is a non-profit corporation devoted to protecting and defending victims of scientific and medical corruption.  Known in the industry as Junk Science, scientific and medical corruption takes many forms but generally involves the reluctance on the part of state and federal governmental agencies to investigate and prosecute instances where science and medicine violate the law.  The most apparent examples to the general public involve pharmaceutical companies whose products generate billions of dollars in profits and even when sanctioned pay only negligible fines in comparison to the harm they perpetuate.

8.    Among the range of services OMSJ provides and the people OMSJ protects are:

a.    Children, parents and others subjected to criminal, civil or administrative action used to enforce health department compliance (i.e. pharmaceutical, chemo, vaccine schedule etc.), and expert support in criminal, civil and UCMJ (military) proceedings;

b.    Defendants charged with violations of health-related laws (i.e. criminal HIV cases);

c.      Parents of vaccine-injured children who are accused of "child abuse" or murder (i.e. "shaken baby syndrome");

d.      Researchers, doctors, students, and academics who become aware of ethical conflicts or corruption within research centers, universities, hospitals, and the pharmaceutical industry;

e.      Members of medical and scientific non-government organizations (NGOs);

f.      Due diligence investigations for donors who fund research grants and gifts.

9.      One of OMSJ's areas of specialization is the provision of medical, scientific, legal, and investigative support to legal counsel in the defense of those charged with criminal or civil offenses related to HIV and other diseases. Through the HIV INNOCENCE GROUP, an entity wholly owned and operated by OMSJ, Baker and OMSJ assist both private and government defense counsel in the defense of persons accused of assault under criminal statutes that make it a crime to knowingly transmit the HIV virus.  The Ryan White Act passed in 1990 provides billions of dollars of federal aid to prosecutors seeking to enforce HIV related statutes. These cases involve a high degree of technical expertise and most of the medical and scientific expertise that does exist provides little assistance for attorneys in the criminal law field and most of the funds available are earmarked toward prosecution, not defense.  It was into this void of useful scientific legal support that OMSJ, acting through the HIV INNOCENCE GROUP, has tried to make a difference.  Since its inception in 2009 the HIV INNOCENCE GROUP has successfully provided investigatory and expert support in over fifty cases resulting in the dismissal or significantly reduced plea bargain of HIV related charges.

4

**B.      Federal and Internet Domain Registration for HIV INNOCENCE GROUP:**

10.      On October 9, 2009 OMSJ took steps to preserve and protect its rights in HIV INNOCENCE GROUP by securing the rights to the legal domain name www.omsj.org in order to launch its Internet presence in connection with the promotion of its services, including HIV INNOCENCE GROUP.  On January 10, 2010, OMSJ launched its website located at www.omsj.org.

11.      In late 2011, Plaintiff OMSJ took steps to protect the property right it owned in the name and mark HIV INNOCENCE GROUP by filing and receiving federal protection.  OMSJ now owns the United States Trademark Registration No. 4,164,161 for the mark HIV INNOCENCE GROUP having successfully applied to register the mark HIV INNOCENCE GROUP on October 25, 2011 with the United States Patent and Trademark Office (hereinafter "USPTO"). The mark received Serial No. 85/455,820 and on June 26, 2012 the mark HIV INNOCENCE GROUP registered on the Principal Register and received Registration No. 4,164,161. Thus, there is no factual dispute that the Plaintiff OMSJ is the owner of the trademark/name HIV INNOCENCE GROUP.

**C.      Detractors and Deshong:**

12.      Plaintiff's activities and efforts in defending those accused of HIV based crimes has placed it in direct conflict with the mainstream medical community and the pharmaceutical industry.  The pharmaceutical industry has a vested financial interest in advancing a specific set of HIV and AIDS related "facts," many of which are not facts at all. In order to do so with any degree of credibility the drug industry depends on physicians throughout the United States and internationally to support a medical and

scientific view of HIV/AIDS that promotes an agenda of drug based treatment thus generating billons of dollars worldwide.  Part of that agenda involves the reliability of HIV testing methods that not only trigger the use of the wide array of drugs now available to treat the condition, but those same methods are relied upon by prosecutors at the local, state and federal level in HIV related criminal cases.  Therefore, Plaintiffs' challenge to the veracity of HIV testing for purposes of criminal prosecution directly threatens the broader financial interests of the pharmaceutical industry.

13.    While pharmaceutical companies can and do directly attack Plaintiffs, any such attack on Plaintiffs' credibility requires a certain degree of medical and scientific accuracy. Unfounded statements and baseless accusations made publicly against Plaintiffs by pharmaceutical companies draw attention to the misinformation these companies propound. By engaging in a public attack on Plaintiff and thereby engaging in a dispute over the veracity of the information the drug companies proffer, they risk undermining their business interests and bringing the scrutiny of federal and state health agencies who would have little choice but to address blatant examples of misinformation and misleading statements from these entities that are financially benefiting from disseminating less than truthful information.  Additionally, physicians whose objectivity has been compromised by the heavy monetary compensation paid by drug companies face the same problem.  Not only do they stand to appear less than objective, but also their activities, both as recipients of drug company funds and statements of medical expertise, are subject to the regulatory authority of the medical boards across the country. Misrepresentations, misleading statements, and blatant conflicts of interest are all

potentially the basis of investigation and sanction.  In addition, such conduct falls under the broader prohibition of unprofessional conduct and can result in public reprimand, suspension, and in extreme cases, license revocation.  Thus, despite the desire to openly undermine the Plaintiffs' efforts by impugning their reputations, both the drug companies and the medical professionals who benefit financially from drug company profits must exercise some degree of care in opposing Plaintiffs in the public forum.

14.    The desire to discretely undermine Plaintiffs and impugn their reputation has spawned a small, but active community of persons who are affiliated or supported by the drug companies, their paid physicians or both.  One such person is Defendant J. Todd Deshong. Defendant and others like him become the platform through which physicians and drug manufacturers attack the Plaintiffs and others similarly situated without the potential liability that would come from direct and open defamation, essentially using Defendant as a shield from liability.  Deshong is an activist for gay and lesbian rights, which on its face a legitimate social cause.  However, Deshong uses his status as a proponent for gay rights and his academic credentials to add credibility to his assault on what he and his benefactors deem "AIDS denialists." Deshong's connection to the medical profession/pharmaceutical industry appears to come from several sources. Firstly, Plaintiffs' research indicates he is associated with members of a South African blog, AIDStruth, that is funded by the pharmaceutical industry and counts among its members prominent physicians from both Cornell and Harvard.  Secondly, Deshong appears to be directly connected to Dr. Robert Gallo, an American biomedical researcher from Baltimore, Maryland. Dr. Gallo is credited with discovering of HIV.  Gallo's entire

career is predicated upon the existence of HIV as a retrovirus, and his discovery not only affords him critical acclaim, but also ensures the on-going financial viability of his research. In addition to receiving the Lasker Award in 1986, Gallo obtained a $15,000,000 grant from the Gates Foundation in 2007 to continue his research.  However, Gallo's status in the medical community has not been without controversy, and a dispute with researchers from the Pasteur Institute in France put Gallo's status as the discoverer of HIV in question and perhaps cost him a portion of the 2002 Nobel Prize. Both Gallo's prestige and his connection to an industry that depends on HIV being medically treatable through drugs put him adverse to Plaintiffs.  Deshong's role is to discredit Plaintiffs on behalf of Gallo and the pharmaceutical interests.  While Plaintiffs acknowledge there are multiple sides to the issue of HIV it is the illegal methods employed by Deshong in attacks on Plaintiffs that form the basis of this lawsuit.

**Defamation and Trade Name Infringement:**

15.    Despite Plaintiffs' legal ownership of the HIV INNOCENCE GROUP name, both as a federally protected trade name and an Internet domain name, Deshong took clear and deliberate steps to defame Plaintiffs by using OMSJ's trade name as a vehicle to disparage Plaintiffs' business reputations by calling into question the quality of their work and the truthfulness of their on-line representations. On or about July 20, 2011 Defendant Deshong began using the domain names hivinnocencegrouptruth.com and hivinnocenceprojecttruth.com.  Defendant could have used virtually any name other than the almost identical derivatives of Plaintiff OMSJ's trade name.  However, Deshong intentionally chose those names because they are confusingly similar to Plaintiff OMSJ's

registered mark, HIV INNOCENCE GROUP, Reg. No. 4,164,161.  Federal trademark law is clear that the test of trademark or trade name infringement lies in the ability to create the "likelihood of confusion among consumers" and that proof of actual confusion, whether among consumers or non-consumers, creates an almost irrebuttable presumption of the likelihood of confusion among consumers.  Deshong knew that OMSJ had an active presence within the HIV litigation community and that its website was designed to spread information about its services.  Part of the information published by OMSJ is the credentials and integrity of OMSJ's CEO, Plaintiff Clark Baker, and the success rate of OMSJ's expert investigatory skills in HIV criminal cases.  By using domain names that are virtually identical to OMSJ's registered trademark, Deshong made it possible to put his defamatory message in front of prospective OMSJ clients by causing any search of the name owned by OMSJ, HIV INNOCENCE GROUP, to simultaneously bring up Defendant's domain names, sometimes side by side within the search engine results.  Defendant's domain names are nothing more than OMSJ's registered and protected trade name with the descriptive and/or generic terms "project" and "truth" added therein.  Deshong's use of OMSJ's mark as a domain name creates what has been labeled in trademark infringement law as "initial interest confusion." This type of confusion occurs when Internet users enter the mark as the domain name or in a search engine query expecting to arrive at the owner of that mark's website. When Internet users type OMSJ's service mark "HIV INNOCENCE GROUP" in any number of the available search engines, Defendant's URL's and therefore the defamatory and misinformation they contain appear. When users arrive at the site or get the search engine results, they are

often confused by the infringer's URL's, website, and the information contained therein. This confusion occurs because of Defendant's unlawful use of OMSJ's protected mark.

16. That initial moment of confusion is all Deshong needs to effectuate his goal. When an Internet searcher arrived at Deshong's site he or she was exposed to the following defamatory statements or efforts to impugn Plaintiffs. The following all occurred when searchers believed they were being directed to OMSJ's website:

a. Deshong's stated purpose is not informational or in any way fair use. He admits in writing on-line that his purpose it to "deconstruct" the HIV INNOCENCE GROUP. He states that his goal is the economic destruction of Clark Baker and OMSJ. In his own words he states, "It is therefore the sole purpose of this site to provide the general public, and attorneys seeking Baker's help, and any interested parties, the proof that Clark Baker's Innocence project, now called the Innocence Group is a useless tool of AIDS denialist propaganda." This stated purpose undermines any notion that the confusion Deshong causes and the infringement of OMSJ's trade name is for any fair use or enjoys any protection thereunder. The admitted purpose is to economically destroy Baker and OMSJ.

b. September 28, 2011: Deshong directly impugns the reputation of legal counsel for OMSJ with absolutely no proof.

c. October 29, 2011: Deshong knows his statements are defamatory and that he is violating federal trademark law because rather than post or communicate under his own name, he has attempted to provide yet another layer of protection by operating under the

alias of "Jack Night." In so doing he directly contacts and threatens attorneys who form a part of the client base for OMSJ.

d.      November 2, 2011: In an effort to discredit Baker and OMSJ Deshong attempts to undermine a legal victory in a case in Florida when again he has no factual or legal basis to do so.

e.      December 13, 2011: In an effort to disparage OMSJ, Deshong attacks both Baker and OMSJ in what he calls "Debunking Clark Baker's Analysis of Flow Cytometry: Part I." The post is revealing for two reasons. First, it lacks any objective support for the allegations made therein. Second, it demonstrates that Deshong is working for pharmaceutical companies and/or physicians who need to attack OMSJ's position at a scientific and academic level that is beyond Deshong's expertise.

f.      March 5, 2012: In an effort to have someone else do some research as to the defamatory and unsubstantiated claims made in his web-site, Deshong offers a $1,000 reward for information to support seven statements made by OMSJ. What Deshong is trying to do is use the fact that he has no objective evidence to support the defamatory statements made against Baker and OMSJ to his advantage by making it appear that he has made a prima facie case that Baker and OMSJ are not telling the truth and then offering money he does not have as a reward to anyone that can substantiate Baker and OMSJ's claims.

g.      March 26, 2012: Deshong openly misrepresents on his web-site the status of and OMSJ's involvement in an Air Force defense case involving HIV assault. In the process,

he completely misrepresents the actions and opinions of both the client and his legal counsel.

h.      June 24, 2013: A search of HIV INNOCENCE GROUP leads the searcher to the following: "Why the HIV Innocence Group is sick and evil bullshit." The headline appears under Defendant's URL and invites users into the site for the specific purpose of disparaging Plaintiffs.

This last statement reflects how Defendant has changed his approach and made it more difficult for Plaintiffs to document the defamatory comments being made by Deshong. Now upon entering the site, the reader must register to access the array of defamatory statements, none of which have any supporting evidence or any way to verify their truth or see them in context. However, if you cannot enter the site because you lack registration, the viewer is left with the totally inaccurate and disparaging remark set out above with no way to verify why such a statement is being made. All the searcher knows is that he entered HIV INNOCENCE GROUP as a search term.

17.     All of these unsupported and defamatory remarks are made using a domain name that infringes on Plaintiff OMSJ's federally protected trade name, and Deshong has intentionally created actual confusion in an effort to disparage OMSJ in front of the very audience OMSJ seeks to reach in order to perform its corporate, non-profit goal.  It is inconceivable that Deshong can assert that his use of OMSJ's name is not an infringement or that the infringement is otherwise protected under some notion of "fair use."  As stated in paragraph 16(h) herein above, Deshong has now gone underground in his efforts to disparage Plaintiffs.  In an effort to stop Deshong by legally appropriating

his domain names, Plaintiffs took advantage of the ICANN Uniform Domain Name Dispute Resolution Policy to try and force the domain registration body, Wild West Domains LLC, to compel Deshong to take down his domain names.   The policy establishes a non-binding arbitration forum for third parties like Plaintiffs to challenge people like Deshong.   Unfortunately, the arbitration body had no expertise in trademark or trade name infringement and allowed Deshong's unsupported assertions of good faith usage to stand.   The panel declined to transfer the domain names to Plaintiffs, but the policies that governed the arbitration made it clear that either party was free to pursue complete relief in any court of law.   The upshot of Plaintiffs' challenge is that Deshong has now removed the public access to his domain name and essentially taken his defamatory practices and domain name private.

## FIRST CAUSE OF ACTION:
### Federal and Texas Trademark Infringement: Lanham Act,
### 15 U.S.C.A. §§1051 –1127, and Texas Business and Commerce Code §16.001 et. seq.

Plaintiffs hereby incorporates paragraphs 1-17 as if fully set forth herein under and in addition would plead as follows:

18.    In order to prove a claim for trade name infringement under both federal and state law Plaintiffs are required to plead and prove the following:

(a) it has a valid and legally protectable mark;

(b) it owns the mark; and

(c) the defendant's use of the mark to identify goods or services causes a likelihood of confusion.

13

19.     OMSJ has clearly demonstrated it owns the mark by virtue of its federal trademark filing.   That same filing demonstrates that the mark itself is capable of protection.   Because the mark is neither generic nor descriptive, but rather fanciful and arbitrary, the name is subject to protection without any showing of consumer identification.   A variety of factors go to proving likelihood of confusion including, but not limited to, similar name, similar field of endeavor or business, similar method of advertisement or reaching the public, and intent.   In addition, where a plaintiff can demonstrate actual confusion, the presumption of likelihood of confusion becomes so strong that a defendant must present an almost overwhelming amount of evidence to overcome the presumption.

20.     As set out previously, OMSJ can demonstrate malevolent intent on the part of Defendant, actual confusion, similarity of the names to the point of being almost identical, identical audience, identical advertising medium, and actual harm.   Every element of a prima facie case for federal trademark infringement exists, and Defendant enjoys none of the protections afforded by the fair use doctrine. To date Plaintiff OMSJ has been damaged in a monetary amount of in excess of the jurisdictional limit of this Court to be proven at trial for which it prays relief be granted.

## SECOND CAUSE OF ACTION:
### Defamation

Plaintiffs hereby incorporates paragraphs 1-17 as if fully set forth herein under and in addition and/or the alternative would plead as follows:

21.     The elements of a common law claim for defamation are:

(a) The defendant published a statement;

(b) The statement was defamatory concerning the plaintiff;

(c) The defendant acted with

> (i) actual malice, if the plaintiff was a public official or public figure, <u>or</u>

> (ii) negligence, if the plaintiff was a private individual, regarding the

> truth of the statement.

22.    There is no question that Defendant has published numerous statements and has in fact used his domain name and website to do so.  There is also no question that the statements are defamatory. They allege that Plaintiff Baker is incompetent, that he knowingly makes false and misleading representations to the public, that his legal and scientific theories with regard to HIV are a hoax, that Baker's reputation as a former LAPD police officer is misleading, and other personally disparaging remarks. While Plaintiff Clark Baker is a private individual, he may be a "public figure for a limited purpose" specifically for purposes within the HIV/AIDS criminal field.  Regardless, even if held to a higher standard of proof, Plaintiff Baker can demonstrate Defendant has acted and continues to act with actual malice.

23.    Plaintiff Baker can also demonstrate actual economic harm as a direct and proximate result of Defendant's written statements. To date Plaintiff Baker has been damaged in a monetary amount of $100,000.00 for which it prays relief be granted.

<u>**THIRD CAUSE OF ACTION:**</u>
<u>**Business Disparagement**</u>

Plaintiffs hereby incorporates paragraphs 1-17 as if fully set forth herein under and in addition and/or the alternative would plead as follows:

24.     The elements of a business disparagement claim in Texas are:

(a)     The Defendant published disparaging words about the Plaintiff's economic interests;

(b)     The words were false;

(c)     The Defendant published the words with malice;

(d)     The Defendant published the words without privilege;

(e)     The publication caused special damages.

25.     There is no question that Defendant published the disparaging words about Plaintiff OMSJ's economic interest.   His website and use of his domain names profess to destroy the business reputation of OMSJ and its affiliate the HIV INNOCENCE GROUP. The words are clearly false, and Defendant has acted with malice in that he knows his words are not true or he has acted in reckless disregard of their truth.   Defendant enjoys no privilege that would allow him to make such statements, and OMSJ has and continues to suffer direct pecuniary loss as a proximate result of Defendant's statements. To date Plaintiff OMSJ has been damaged in a monetary amount of $100,000.00 for which it prays relief be granted.

## FOURTH CAUSE OF ACTION:
### Injunctive Relief

Plaintiffs hereby incorporates paragraphs 1-17 as if fully set forth herein under and in addition and/or the alternative would plead as follows:

26.    While Plaintiffs are able to calculate the monetary damages they have suffered as a direct result of Defendant's defamatory conduct and infringement of OMSJ's trademark, they cannot with any reasonable certainty calculate future harm. Thus, Plaintiff OMSJ seeks a permanent injunction against Defendant prohibiting the on-going use of OMSJ's trade name.

27.    The elements of a claim for permanent injunction are:

(a) the existence of a wrongful act,

(b) the existence of imminent harm,

(c) the existence of irreparable injury, and

(d) the absence of an adequate remedy at law.

28.    Under the Lanham Act (15 USC §1116 (a)) a federal court may issue an injunction to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office.  Given the statutory authority for doing so Plaintiff OMSJ can show all of the elements required for injunctive relief.  First, it is undisputed that Plaintiff has a federally registered and protected trade name and that under the law governing infringement Defendant has infringed on that name.  Second, as demonstrated herein above, the infringement is such that it is being coupled with defamatory statements and those statements have both occurred and continue to occur.  Furthermore, given the nature of the Internet, once some of this material is published, it remains part of the Worldwide Web for an indefinite period of time. Thus, the harm is both imminent and ongoing. Third, because the future harm is incalculable, Plaintiff is suffering an irreparable injury and has no adequate remedy at law.  Deshong's continued use of the

Plaintiff's name allows him to threaten both OMSJ and Baker's business interest with impunity, and it is not possible to place a monetary figure on the future damage.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that Defendant Deshong be cited to appear and answer herein and that upon trial on the merits that Plaintiff be awarded relief as pled for hereinabove. Plaintiffs pray further that this Court grant Plaintiffs any and all further relief whether at law or in equity to which they otherwise show themselves entitled.

Respectfully Submitted,

Date:  July 9, 2013

S/ MARK WEITZ
Mark A. Weitz
SB# 21116500
Weitz Morgan PLLC
100 Congress Avenue, Suite 2000
Austin, Texas 78701
mweitz@weitzmorgan.com
512-394-8950 (direct)
512-657-1849 (mobile)
512-852-4446 (facsimile)

ATTORNEY FOR PLAINTIFFS
OMSJ AND CLARK BAKER