IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CLARK BAKER and OFFICE OF     )
MEDICAL & SCIENTIFIC JUSTICE, INC.,   )
                          )
          Plaintiffs,      )
                          )
v.                           )
                          )
JEFFREY[1] TODD DESHONG,     )
                          )
         Defendant.     )   Civil Action No. 4:13-CV-552-C

## ORDER

On this date, the Court considered the following:

(1) Defendant Jeffery Todd DeShong's Motion to Dismiss for Failure to State a Claim, and in Part for Lack of Subject Matter Jurisdiction, filed January 31, 2014, and the Response filed by Plaintiffs, Clark Baker and The Office of Medical & Scientific Justice, Inc.[2]; and

(2) Defendant's Motion for Leave to Submit Supplemental Affidavit in Support of Motion to Dismiss and Special Motion to Dismiss, filed May 2, 2014, and Plaintiffs' Response.

## I. FACTS

Clark Baker is a private investigator and founder of The Office of Medical & Scientific Justice, Inc. Baker is retained by defendants charged with violations of health-related laws—

---

[1]Also spelled as "Jeffery" in documents filed by Plaintiffs.

[2]The Court will refer to Plaintiffs collectively as "Baker."

such as criminal HIV cases—to demonstrate that HIV does not cause AIDS,[3] among other investigative ventures. To effect this purpose, Baker created the HIV Innocence Group, an entity wholly owned by The Office of Medical & Scientific Justice, through which he markets his investigatory services. Baker is also the owner of the federally registered trademark "HIV Innocence Group."

J. Todd DeShong operates the website www.hivinnocencegrouptruth.com by which he attempts to discredit Baker specifically and his AIDS-denialist beliefs generally. DeShong publishes information on his website that, to put it succinctly, is less than complimentary of Baker's professional work. The website contains the following message from DeShong:

> It is therefore the sole purpose of this site to provide the general public, and attorneys seeking Baker's help, and any interested parties, the proof that Clark Baker's Innocence project, now called the Innocence Group is a useless tool of AIDS denialist propaganda [sic].

It also displays this headline: "Why the HIV Innocence Group is sick and evil bullshit."

In essence, DeShong's website is wholly dedicated to discrediting Baker and the work he undertakes through The Innocence Group. Baker complains that DeShong's website infringes on The Innocence Group trademark. DeShong counters that, even taking Baker's allegations as true, he has failed to allege facts demonstrating a plausible likelihood of confusion. The Court agrees.

## II. STANDARD

In order for a complainant to state a claim for relief, the complainant must plead a short, plain statement of the claim showing entitlement to such relief. *See* Fed. R. Civ. P. 8. To

---

[3]Those who believe that HIV does not cause AIDS are sometimes referred to as "AIDS denialists."

survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  While this standard does not require the complainant to make detailed factual allegations, it does demand more than a complainant's bare assertions or legal conclusions. *Id.* at 678.  Hence, formulaic recitations of the elements of a cause of action supported by mere conclusory statements do not satisfy Rule 8. *Id.*

## III. DISCUSSION

*A.  Lanham Act Claims*

DeShong raises a First Amendment defense to Baker's claims.  But because the Court can resolve the motion on statutory grounds, it need not reach the constitutional issue.  The Lanham Act prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service. *See* 15 U.S.C. §§ 1114 & 1125(a).  To state a claim for trademark infringement, a trademark holder must satisfy the following elements:

> (1) it possesses the mark;
> (2) the defendant used the mark;
> (3) the defendant's use of the mark occurred in commerce;

3

(4) the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and
(5) the defendant used the mark in a manner likely to confuse consumers.[4]

*Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) (citing 15 U.S.C. §§ 1114 & 1125;

*People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001)).

For Baker to prevail on his Lanham Act claims, he must show that DeShong's use of the

domain name www.hivinnocencegrouptruth.com creates a likelihood of confusion in the minds

of potential clients as to the source, affiliation, or sponsorship of DeShong's website. *See Soc'y*

*of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs, Inc.*, 41 F.3d 223, 227 (5th Cir.

1995); *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986); *see also* 15

U.S.C. §§ 1114(1), 1125(a)(1)(A). Liability for trademark infringement hinges on whether a

likelihood of confusion exists between the marks at issue. *See Society of Fin. Exam'rs*, 41 F.3d

at 227. Likelihood of confusion is synonymous with a probability of confusion, which is more

than a mere possibility of confusion. *See Blue Bell Bio-Med. v. Cin-Bad, Inc.*, 864 F.2d 1253,

1260 (5th Cir. 1989).

Courts look to the following nonexhaustive list of factors to determine if there is a

likelihood of confusion: (1) the type of trademark allegedly infringed; (2) the similarity between

the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets

and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and

---

[4]While the precise nature of Plaintiff's claims is not clear, he recites these elements in both his amended complaint and response to DeShong's motion to dismiss. So the Court takes as undisputed that Plaintiff must demonstrate these elements to state a claim under the Lanham Act.

(7) any evidence of actual confusion. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998).

Baker alleges that his mark is fanciful or arbitrary, making it subject to protection without any showing of consumer identification. DeShong's domain name closely resembles Baker's mark, but the fact that DeShong's website ends in "truth" tips off potential clients that the website is not sponsored by or affiliated with The Innocence Group. More important than the resemblance of the marks themselves, however, is that DeShong's website does not look like it could be sponsored by or affiliated with The Innocence Group, and DeShong has made no effort to create a website that could pass as Baker's. Moreover, Baker does not even argue that DeShong's website constitutes advertising or a facility for business, let alone a facility or advertising similar to that of Baker. DeShong clearly created his website with the intent only to provide a forum to criticize Baker, not to steal his clients.

Most importantly, Baker and DeShong do not offer similar goods or services. Baker's mark identifies a service that investigates HIV- and AIDS-related crimes; the website at www.hivinnocencegrouptruth.com criticizes the very premise of Baker's business. No reasonable person would take one look at DeShong's website and believe that Baker authorized its content. No one would believe that Baker sponsored a site criticizing himself or the scientific underpinnings of his work. *See New Kids on the Block v. News America Publ'g, Inc.*, 971 F.2d 302, 308-09 (9th Cir. 1992) (stating that use of a mark to solicit criticism of the markholder implies the markholder is not the sponsor of the use).

Baker also complains that DeShong's intent in running the website is relevant to the likelihood of confusion analysis because he means to destroy Baker's business. But this kind of

intent is not relevant to the Court's inquiry. Instead, courts looks to the defendant's intent to

derive a benefit from the reputation of the markholder as an indication of a likelihood of

confusion. Baker alleges no such intent. Although he contends that DeShong, by running

www.hivinnocencegrouptruth.com, intends to harm his business, he does not allege that

DeShong chose the domain name in an attempt to piggyback off the goodwill of Baker's The

Innocence Group mark. The Lanham Act simply does not protect markholders from the kind of

intent Baker alleges. *See Bosley Med. Inst. v. Kremer*, 403 F.3d 672, at 676-77 (9th Cir. 2005);

*see also Lamparello*, 420 F.3d at 313 ("[P]rotections against unfair competition cannot be

transformed into rights to control language.") (internal quotation marks omitted).

As for the final factor, Baker alleges the following in an attempt to plead actual

confusion:

> When Internet users type OMSJ's service mark "HIV
> INNOCENCE GROUP" in any number of the available search
> engines, Defendant's URL's and therefore the defamatory and
> misinformation they contain appear. When users arrive at the site
> or get the search engine results, they are often confused by the
> infringer's URL's, website, and the information contained therein.
> This confusion occurs because of Defendant's unlawful use of
> OMSJ's protected mark.

Yet, Baker's allegations of actual confusion pertain to a hypothetical potential client instead of

recounting any actual experience of a potential client. Moreover, the allegation regarding

confusion is conclusory. He claims that this hypothetical person searching for his trademark

would be confused as to the content of DeShong's website, but he makes no allegation that the

potential client would be confused as to the *source* of the website, which is the only kind of

6

confusion with which the Lanham Act is concerned. *See Pebble Beach Co. v. Tour*, 155 F.3d 526, 537 (5th Cir. 1998).

Baker also argues that he has alleged facts invoking initial interest confusion. The Lanham Act forbids a competitor from luring potential clients away from a service provider by initially passing off its services as those of the markholder, even if confusion as to the source of the goods is dispelled by the time any sales are consummated. *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996). According to Baker, this doctrine requires the Court to compare his mark with the domain name www.hivinnocencegrouptruth.com without considering the content of DeShong's website. Baker argues that some people mistakenly visit www.hivinnocencegrouptruth.com assuming it is his site, thus giving DeShong an unearned audience—albeit one that quickly disappears when it realizes it has not reached Baker's site. But Baker's argument is misplaced.

In support of his initial interest confusion argument, Baker relies exclusively on the *PETA* case. 263 F.3d 359 (4th Cir. 2001). Yet, in *Lamparello*, the Fourth Circuit, which is the same court that decided *PETA*, noted that "*PETA* simply outlines the parameters of the parody defense; it does not adopt the initial interest confusion theory or otherwise diminish the necessity of examining context when determining whether a likelihood of confusion exists." 420 F.3d at 316. The court went on to opine that "[w]hen dealing with domain names, this means a court must evaluate an allegedly infringing domain name *in conjunction with the content of the website identified by the domain name*." *Id.* (emphasis added). "[I]t has long been established that even when alleged infringers use the *very marks at issue* in titles, courts look to the underlying *content* to determine whether the titles create a likelihood of confusion as to source." *Id.* n.4 (citing

*Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 667-68 (5th Cir. 2000)) (emphasis in the original).

Even if the Court were to apply the initial interest confusion theory here, it would not help Baker because it provides no basis for liability in circumstances such as these. The few appellate courts that have followed the Ninth Circuit and imposed liability under this theory for using marks on the Internet have done so only in cases involving a factor absent here—one business's use of another's mark for its own financial gain. *See, e.g., PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 253 (6th Cir. 2003); *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1055-56 (9th Cir. 1999). Even offline uses of marks found to cause actionable initial interest confusion have involved financial gain. *See Elvis Presley Enters.*, 141 F.3d at 204; *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 260 (2d Cir. 1987).

Profiting financially is therefore a key element for imposition of liability under the initial interest confusion theory. *Lamparello*, 420 F.3d at 317. When an alleged infringer does not compete with the markholder for sales, "some initial confusion will not likely facilitate free riding on the goodwill of another mark, or otherwise harm the user claiming infringement. Where confusion has little or no meaningful effect in the marketplace, it is of little or no consequence in [the] analysis." *Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 296-97 (3d Cir. 2001). For this reason, an alleged infringer is not liable for using another's mark in its domain name if it "could not financially capitalize on [a] misdirected consumer [looking for the markholder's site] even if it so desired." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002).

"This critical element—use of another firm's mark to capture the markholder's customers and profits—simply does not exist when the alleged infringer establishes a gripe site that criticizes the markholder." *Lamparello*, 420 F.3d at 317 (citing Hannibal Travis, *The Battle for Mindshare: The Emerging Consensus That the First Amendment Protects Corporate Criticism and Parody on the Internet,* 10 Va. J.L. & Tech. 3, 85 (Winter 2005) ("The premise of the 'initial interest' confusion cases is that by using the plaintiff's trademark to divert its customers, the defendant is engaging in the old 'bait and switch.' But because . . . Internet users who find [gripe sites] are not sold anything, the mark may be the 'bait,' but there is simply no 'switch.'") (citation omitted).  Applying the initial interest confusion theory to gripe sites like DeShong's would enable the markholder to insulate himself from criticism—or at least to minimize access to it.  Such use of the Lanham Act is condemnable because a markholder cannot "shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct." *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 462 (4th Cir. 2000) (quoting *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 33 (1st Cir. 1987)).  "[J]ust because speech is critical of a corporation and its business practices is not a sufficient reason to enjoin the speech." *Id.*

So even taking Baker's factual, non-conclusory allegations as true, he has failed to raise an inference that any reasonable person could confuse the content of DeShong's website with his The Innocence Group mark.  That is, Baker has not pleaded facts of actual confusion, an essential element to his Lanham Act claims.  Accordingly, DeShong's Motion to Dismiss Baker's Lanham Act claims is **GRANTED**.

9

*B. Supplemental Jurisdiction*

In addition to his claims under the Lanham Act, Baker alleges state-law trademark and defamation claims.  While the Lanham Act claims confer federal question jurisdiction under 28 U.S.C. § 1331, the state-law claims come in under the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).  To determine whether to retain pendent state claims, courts "look to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158-59 (5th Cir. 2011).  Under § 1367(c), a district court may decline to exercise supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *Id.* at 159 (citing 28 U.S.C. § 1367(c)).

Whereas Baker's state-law claims are not novel or complex, the procedural mechanism by which DeShong seeks dismissal of them is.  DeShong moves to dismiss the Lanham Act claims by his Federal Rule of Civil Procedure 12(b)(6) motion, but he seeks the dismissal of Baker's state-law claims by way of the Texas Citizens Participation Act, or the anti-SLAPP[5] statute.  The Act was passed in 2011 and essentially allows a defendant to file a motion to dismiss by which the court may consider evidence, but before any discovery is conducted. *See* Tex. Civ. Prac. & Rem. Code §§ 27.001 *et seq.*  This procedural mechanism has received

---

[5]SLAPP stands for "strategic lawsuit against public participation."

10

little attention by the federal courts, and it is not clear if it conflicts with the Federal Rules of Civil Procedure, which would make it inapplicable here.[6]

As for the second statutory factor, the state-law claims predominate over the now non-existent federal claims. And, in disposing of Baker's Lanham Act claims, the Court has dismissed all claims over which it has original jurisdiction. The fourth factor also favors remand because the balance of common law factors in favor of remand constitutes another compelling reason to decline jurisdiction.

The common law factors as set forth in *Carnegie-Mellon University v. Cohill* include judicial economy, convenience, fairness, and comity. 484 U.S. 343, 350, 353 (1988). First, hardly any federal resources have been devoted to this Court's consideration of the state-law claims. The case is still in its early stages, and no discovery has been conducted. There would be no need for either party to duplicate any research, briefing,[7] hearings, or other trial preparation work. In that same vein, no party would suffer a financial inconvenience from having to duplicate any of their previous efforts and expenses. And there is certainly nothing unfair about having purely state-law claims heard in a state court. Finally, the fourth common-law factor demands that the "important interests of federalism and comity" be respected by federal courts, which are courts of limited jurisdiction and "not as well equipped for determinations of state law

---

[6]Although the Fifth Circuit applied the Texas Citizen's Participation Act in *NCDR, LLC v. Mauze & Bagby, PLLC*, 745 F.3d 742 (5th Cir. 2014), the court noted that it did so because the party contending that the Act does not apply in federal court waived the argument by not raising it before the district court. *Id.* at 753 ("Because [plaintiff] waived its argument that the [Act] is a procedural law that conflicts with the Federal Rules of Civil Procedure, we proceed assuming that it does not.").

[7]While DeShong may refile his motion to dismiss under the Texas Citizens Participation Act in state court, he could essentially use the same brief he filed here.

as are state courts." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.3d 580, 588-89 (5th Cir. 1992).

On balance, the statutory and common-law factors weigh against the Court's assumption of supplemental jurisdiction over the state law claims. Therefore, Baker's state-law trademark and defamation claims are **DISMISSED WITHOUT PREJUDICE.**

*C. Motion for Leave*

On May 2, 2014, DeShong requested leave of court to file an affidavit in support of his motion to dismiss Baker's defamation claims. Because the Court is not considering that issue, DeShong's motion is **DENIED** as moot.

## IV. CONCLUSION

For the reasons stated herein,

(1)     Plaintiffs' Motion to Dismiss is **GRANTED** as to Plaintiffs' Lanham Act claims;

(2)     Plaintiffs' Lanham Act claims are **DISMISSED;**

(3)     Plaintiffs' state-law trademark and defamation claims are **DISMISSED WITHOUT PREJUDICE;** and

(4)     Defendant's Motion for Leave to Submit Supplemental Affidavit in Support of Motion to Dismiss and Special Motion to Dismiss is **DENIED** as moot.

SO ORDERED.

Dated this ___26th___ day of June 2014.

SAM R. CUMMINGS
UNITED STATES DISTRICT JUDGE

12